UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAMO DEMOLITION COMPANY,
d/b/a ADAMO GROUP INC., and
ADAMO GROUP,

              Plaintiffs,              Civil Case No. 19-11999
                                                  Honorable Linda V. Parker
v.

INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 150 and
JAMES M. SWEENEY,

              Defendants.
_____/

## **OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING DEFENDANTS' MOTION TO DISMISS**

Defendants filed a "Joint Notice of Removal" on July 5, 2019, removing the Complaint Plaintiffs filed in the Wayne County Circuit Court to federal court. Defendants assert that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1441(a) because Plaintiffs' state law claims are preempted under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Arguing that their claims are not preempted, Plaintiffs have filed a motion asking the Court to remand the matter to state court. (ECF No. 7.) The motion has been fully briefed. (ECF Nos. 12, 15.) Because the Court disagrees with Plaintiffs regarding its jurisdiction over the claims in its Complaint, it is denying their motion.

The Court therefore has jurisdiction to also decide Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6.) Defendants seek dismissal of Plaintiffs' claims because, Defendants argue, they are preempted by § 301 of the LMRA. Alternatively, Defendants contend that Plaintiffs claims are preempted by the *Garmon* Doctrine, *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). Defendants also argue that Plaintiffs cannot assert § 301 claims against an individual and this is further reason to dismiss Plaintiffs' claims against Defendant James Sweeney. Defendants' motion to dismiss also has been fully briefed. (ECF Nos. 10, 13.)

## I. Applicable Standards

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However,

"[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

The Sixth Circuit has advised that "[w]hen deciding a motion to remand," the court should "apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (2012) (citing *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952-54 (6th Cir. 2011)). The court "may 'pierce the pleading' and consider summary judgment evidence, such as affidavits presented by the parties." *Id.* "The court may look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.' " *Id.* (quoting *Walker*, 443 F. App'x at 955-56).

Thus, while Plaintiffs do not refer expressly in their Complaint to the collective bargaining agreement which Defendants argue leads to § 301 preemption in this case, the Court believes it may consider the existence of the agreement and its terms when deciding the motion to remand. Moreover, Plaintiffs allegations allude to the existence of a CBA between Plaintiffs and Defendant

International Union of Operating Engineers Local 150. As will be apparent below, the Court finds that the agreement *is* central to Plaintiffs' claims.

## II. Factual and Procedural Background

Plaintiffs Adamo Group, Inc. and Adamo Group are assumed names of Plaintiff Adamo Demolition Company (collectively "Adamo"). (Compl. ¶ 2, ECF No. 1 at Pg ID 13.) Adamo is a nationwide demolition company. (*Id*. ¶ 15, Pg ID 21.) Sometime prior to March 2018, Commercial Contracting Corporation ("CCC") awarded Adamo a subcontract to complete a substantial demolition project at the Ford Assembly Plant in Chicago, Illinois ("Ford Project"). (*Id*. ¶ 21, Pg ID 21.) CCC was the prime contractor on the project. (*Id*.)

Although not mentioned by Plaintiffs in their Complaint, the Ford Project was governed by the National Maintenance Agreement ("NMA"), a national collective bargaining agreement covering certain projects for large industrial owners, including Ford Motor Company. (Notice of Removal ¶ 15, ECF No. 1 at Pg ID 5.) Adamo and Defendant International Union of Operating Engineers Local 150 ("Local 150") were bound to the terms of the NMA. (*Id.* ¶ 16, Pg ID 5.) These terms govern, among other things, the rights and responsibilities of local unions and out-of-state contractors with respect to the hiring and referral of craft workers, such as the machine operators needed for the Ford Project. (*Id*. ¶ 17, Pg ID 5.) For example, the NMA requires out-of-state contractors to hire craft

5

workers in the area where work is performed in accordance with the hiring procedures in the area. (*Id.* ¶ 18, Pg ID 5.) These local procedures govern the number of outside employees a contractor may bring in from its own workforce and the number of workers the contractor must accept as referrals from the local union, and the qualifications of those workers. (*Id.*)

Before starting the Ford Project, Adamo advised Local 150 that Adamo needed approximately eighty-six experienced, trained, and qualified machine operators for the project. (Compl. ¶ 22, ECF No. 1 at Pg ID 21.) Adamo further advised Local 150 that it would provide thirty-five qualified operators and had four operators in place from Local 150. (*Id.* ¶ 23, Pg ID 21.) Thus, Adamo needed Local 150 to provide an additional forty-seven operators. (*Id.*)

On multiple occasions, Adamo further informed Local 150 and its President-Business Manager, Defendant James Sweeney ("Sweeney") (collectively "Defendants"), that the Ford Project "was extremely time sensitive and any failure or refusal to dispatch [the required number of] experienced, trained and qualified workers would create significant monetary damages, interfere with, hinder and harm Adamo's ability to meet its contractual obligations to CCC and Ford." (*Id.* ¶¶ 4, 24, 25, Pg ID 13, 22.) Adamo also repeatedly informed Local 150 "that experienced, trained and qualified workers were indispensable for creating a safe work environment and any failure to provide them would interfere with, harm and

6

hinder Adamo's ability to meet its contractual duties to CCC and Ford." (*Id*. ¶ 26, Pg ID 22.) Adamo alleges that Defendants nevertheless "willfully refused to provide Adamo contract information for proposed workers, refused to give reasonable assurances to Adamo that operators were experienced, trained and qualified before they were dispatched, and refused to fulfill Adamo's request to verify and confirm [the operators'] qualifications." (*Id*. ¶ 27, Pg ID 22.) Adamo claims that the operators Local 150 provided were unqualified, and it provides several examples to demonstrate their ineptness. (*Id*. ¶ 34, Pg ID 23-24.)

According to Adamo, Defendants also "took deliberate steps to actively and purposefully interfere with the [Ford] Project's progression by inhibiting the experienced, trained and qualified union operators Adamo provided." (*Id*. ¶ 28, Pg ID 22.) Adamo claims that a Local 150 representative on the Ford Project told Adamo's Executive Vice President: "Off the record, the Union sent me over here to cause trouble for Adamo." (*Id*. ¶ 29, Pg ID 23.) Local 150 allegedly interfered with Adamo's performance on the Ford Project by ordering the operators Adamo provided to immediately stop work and "Get off the machines." (*Id*. ¶ 30, Pg ID 23.) Defendants used "pressure tactics and intimidation" to replace Adamo's operators "with grossly unqualified operators." (*Id*. ¶ 31, Pg ID 23.)

Adamo alleges that Defendants' actions "caused disruption and difficulty for Adamo in satisfying [its] obligations to CCC and Ford under the contract[]" and

7

"caused Adamo to breach certain contractual duties to CCC and Ford." (*Id.* ¶¶ 32, 35, Pg ID 23-24.)  Their actions also "created unnecessary delays, extra payroll and benefits obligations, orientation costs, … damages to personal and real property, and interfered with Adamo's contractual relationship, and prospective advantageous business expectancies with CCC and Ford." (*Id.* ¶ 36, Pg ID 24.)

Adamo also alleges that beginning in March 2019, Defendants made defamatory statements concerning Adamo. (*Id.* ¶ 37, Pg ID 24.)  Adamo claims that these false and defamatory statements are affecting its reputation. (*Id.* ¶ 38, Pg ID 24.)

In a Complaint filed in state court on June 7, 2019, Adamo asserts the following state-law claims against Defendants based on the above conduct:

   I. Tortious Interference with Contract with CCC;
   II. Tortious Interference with Business Relationships or Expectancies with CCC;
   III. Tortious Interference with Business Relationships or Expectancies with Ford;
   IV. Tortious Interference with Business Relationships or Expectancies with Union Operators;
   V. Injurious Falsehoods Harmful to Adamo's Interests; and,
   VI. Slander/Defamation.

(Compl. at 14-24, ECF No. 1 at Pg ID 25-35.)  As indicated, Defendants removed Adamo's Complaint to federal court pursuant to 28 U.S.C. § 1331 on July 5, 2019, asserting that all of Adamo's claims are "inextricably intertwined with and require[] interpretation of the NMA." (Notice of Removal ¶ 20, ECF No. 1 at Pg

8

ID 6.) Thus, Defendants maintain, the claims are completely preempted by § 301 of the LMRA.

## III. Applicable Law and Analysis

### A. Preemption Generally

Pursuant to Section 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." To determine whether federal-question jurisdiction exists, the courts look to the plaintiff's complaint:

> "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of [the] plaintiff's properly pleaded complaint . . . The rule makes the plaintiff the master of the claim; he or she may avoid the federal jurisdiction by exclusive reliance on state law."

*Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)) (internal citation omitted). It is well established, however, that state law claims arising from a breach of a collective bargaining agreement ("CBA") are preempted by Section 301 of the LMRA and may be removable to federal court regardless of whether the plaintiff actually alleges federal claims on the face of his or her complaint. *Caterpillar*, 482 U.S. at 392 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)). Yet, it also is "settled law" that a federal defense may not be the basis of removal to federal court. *See id*.

A court's determination of whether a state law claim is preempted by the LMRA focuses on whether the state law "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the . . . claim is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). As the Supreme Court subsequently explained, a state law is not preempted by the LMRA if "resolution of the state-law claim does not require construing the collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 US. 399, 407 (1988). Stated differently: "Section 301 preempts only state law claims that are substantially dependent on analysis of a collective-bargaining agreement …, not claims that only tangentially involve CBA provisions." *Fox v. Parker-Hannifin Corp.*, 914 F.3d 795, 799-800 (6th Cir. 1990) (internal quotation marks and citations omitted).

The Sixth Circuit has developed a two-step approach for determining whether § 301 preempts a state-law claim:

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989), *cert. denied*, 495 U.S. 946, 110 S. Ct. 2204, 109 L.Ed.2d 531 (1990). Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted. *Id. See also Smolarek v. Chrysler Corp.*, 879 F.2d 1326,

10

1331 (6th Cir.), *cert. denied*, 493 U.S. 992, 110 S. Ct. 539, 107 L.Ed.2d 537 (1989).

*DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). When assessing the first criteria, "the court is not bound by the 'well-pleaded complaint' rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *Id.* (citing *Terwilliger*, 882 F.3d at 1037). "If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *Id.* (citing *Dougherty v. Parsec, Inc.*, 872 F.2d 766, 770 (6th Cir. 1989)). "[N]either a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *Id.* (citing *Fox*, 914 F.2d at 800).

If the Court finds any of Adamo's claims preempted by § 301, it must deny the motion to remand. That is because the Court has federal subject matter jurisdiction under § 1331 if at least one of Adamo's claims is preempted.[1]

### B. Tortious Interference

Adamo asserts claims for tortious interference of contract and tortious interference with business relationships or expectancies. In Michigan, these claims

---

[1] Even if some of Adamo's claims are not preempted, the Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367.

11

"require that a defendant's conduct either be *per se* unlawful or be a lawful act done with malice and without legal justification." *T.H. Eifert, Inc. v. United Ass'n of Journeymen*, 422 F. Supp. 2d 818 (W.D. Mich. 2006) (citing *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 158-59 (Mich. Ct. App. 2004)); *see also CMI Int'l, Inc. v. Intermet Int'l Corp.*, 649 N.W.2d 808, 812 (Mich. Ct. App. 2002) (citing cases). The conduct must be "improper," and "improper interference requires both the absence of justification and the purpose of interfering with [the] plaintiff's contractual rights or [the] plaintiff's business relationship or expectancy." *Winemko v. Valenti*, 513 N.W.2d 181, 185 & n.3 (Mich. Ct. App. 1994).

In the Complaint, to support its tortious interference claims, Adamo identifies the following "improper" actions by Defendants: "when they purposely failed to timely dispatch the required number of experienced, trained and qualified operators requested by Adamo"; when they "interfer[ed] with the workers Adamo provided"; when they "provided seriously unqualified workers"; "when they threatened Adamo's highly experienced, trained and qualified operators and ordered them to immediately stop working and "Get off the machines" and … banned experienced operators from the site"; and when they charged these workers and ordered them to pay money. (Pl.'s Br. in Supp. of Mot. at 12-14, ECF No. 7 at Pg ID 173-75, citing Compl. ¶¶ 13, 14, 23-25, 30-31, 33-34.) Adamo maintains

that this conduct does not require interpretation of any terms of a CBA. (*Id*. at 16, Pg ID 177.) Defendants disagree.

Defendants argue that "to determine if [their] conduct was or was not justified or could ever be justified, the court necessarily must examine the parties' relationship, created and governed exclusively by the NMA, and their respective rights and duties under the NMA, in connection with this dispute." (Defs.' Resp. Br. at 11, ECF No. 12 at Pg ID 270.) Defendants explain that Local 150's obligation to dispatch a given number of skilled workers arose from the NMA, specifically Article XIX.[2] (*Id.* at 12, Pg ID 271.) According to Defendants, "whether [they] were justified in dispatching fewer workers, or less skilled workers, than [Adamo] demanded will require the court to examine the terms of the NMA and the area referral procedures incorporated into the NMA." (*Id*. at 11, Pg ID 270, footnote omitted.) Similarly, whether it was "improper" for Defendants to hinder or prevent Adamo's operators from working on the project is dependent on Article XXII of the NMA, which bars "work stoppages, slow downs or other disruptive activity for any reason by the Union or by any employee." (*Id*. at 13, Pg ID 272; *see also* Defs.' Resp. Ex. 1 at 17, ECF No. 12-2 at Pg ID 302.) The same

---

[2] Article XIX of the NMA, titled "Hiring and Transfer of Craft Workers", states in relevant part" "The Employer agrees to hire Craft Workers in the area where work is performed or is to be performed in accordance with the hiring procedure existing in the area …." (Defs.' Resp., Ex. 1 at 16, ECF No. 12-2 at Pg ID 301.)

13

is true with respect to the "pressure tactics and intimidation" Defendants allegedly engaged in during the Ford Project to "displace experienced, trained and qualified operators … and replace them with grossly unqualified operators." If Adamo's "qualified" workers were not entitled to work on the project under the NMA, Defendants did not act improperly to displace them.

Whether Defendants' conduct was justified or "improper" is inextricably intertwined with and dependent upon the terms of the NMA. Adamo's tortious interference claims therefore are fully preempted. *See Adkins v. Gen. Motors Corp.*, 946 F.2d 1201-, 1211-12 (6th Cir. 1991) (concluding that the plaintiffs' tortious interference claims were preempted as the court would have to determine what rights the plaintiffs had under the CBA to adjudicate the claim); *T.H. Eifert*, 422 F. Supp. 2d at 838 (holding that the plaintiffs tortious interference claims were preempted by § 301 where "[t]he rights claimed by [them] were created by the collective bargaining agreement rather than by state law[]" and "where the wrongfulness of [the d]efendants' conduct inevitably will turn on the relationship between the parties established by the [CBA]").

The Court therefore concludes that Adamo's tortious interference claims are preempted by § 301 and must be dismissed.

## C. Injurious Falsehoods and Defamation

Adamo alleges that Defendants "intentionally and maliciously publish[ed] to third parties unprivileged, injurious, false and defamatory statements concerning Adamo." (Compl. ¶ 37, ECF No. 1 at Pg ID 24.) In Counts V and VII of Adamo's Complaint, alleging injurious falsehoods and slander/defamation, respectively, Adamo indicates that those false statements were made to the "experienced, trained and qualified union operators" it needed to complete the Ford Project. (*Id.* ¶¶ 89, 106.) The only specific statements Adamo identifies in its pleading are alleged instructions to the workers to "Get off machinery" and "[i]mmediately stop working."[3] (*Id.* ¶¶ 30, 93, 106.)

Under Michigan law, "a defendant commits an injurious falsehood if [it] publishes a false statement either with knowledge of its falsity or 'in reckless disregard of its truth or falsity.' " *Webster v. United Auto Workers, Local 51*, 394 F.3d 436, 442 (6th Cir. 2005) (quoting *Kollenberg v. Ramirez*, 339 N.W.2d 176, 179 (Mich. Ct. App. 1983)). The statement must be harmful to the plaintiff's interests. *Kollenberg*, 339 N.W.2d at 179. In Michigan, slander is considered defamation. *MacDonald & Goren, PC v. Aetna Cas. and Surety Co.*, No. 93-2624,

---

[3] In the motion to remand, Adamo also refers to an alleged statement Defendant Sweeney made to an unidentified Ford Executive that Adamo did not know what it was doing and should not be working on the job. (Pls.' Mot. at 14, ECF No. 7 at Pg ID 175.) This statement is not referenced in the Complaint, however.

15

1995 WL 106127, at *2 (6th Cir. Mar. 10, 1995). Defamation, under Michigan law, requires proof of the following:

> "1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication."[4]

*Nichols v. Moore*, 477 F.3d 396, 399 (6th Cir. 2007) (quoting *Rouch v. Enquirer & News*, 487 N.W.2d 205, 211 (Mich. 1992)).

Defendants maintain that the collective bargaining agreement is inextricably intertwined with the determination of whether their alleged statements were false and unprivileged. Adamo argues that the truthfulness of the statements at issue and Defendants' privilege in asserting them are defenses instead, and "the presence of a federal question, even a § 301 question, in a defensive argument" does not transform a plaintiff's state law claim into one arising under federal law that permits removal to federal court. *See Caterpiller Inc., supra*.

---

[4] The Michigan courts explain that a defamatory statement is one that "tends to harm the reputation of another by lowering that person's estimation within the community or by deterring third persons from associating or dealing with him." *Mich. Microtech, Inc. v. Federated Publ'ns, Inc.*, 466 N.W.2d 717, 720 (Mich. Ct. App. 1991) (citing *Nuyen v. Slater*, 127 N.W.2d 369 (Mich. 1964)). "A corporation does not have a reputation in a personal sense; however, it does have a business reputation that can be defamed." *Id*. As relevant to the present matter, an action for defamation against a corporation exists "if the corporation is one for profit, and the matter tends to prejudice it in the conduct of its business or to deter others from dealing with it[.]" *Id*. (citing *Heritage Optical, Inc. v. Levine*, 359 N.W.2d 210 (1984)).

If the alleged defamatory statements were published in the setting of a labor dispute, federal law guides this Court's analysis. *Davis Co. v. United Furniture Workers of Am., AFL-CIO*, 674 F.2d 557, 562 (6th Cir.), *cert. denied*, 459 U.S. 968 (1982) ; *see also Linn v. United Plant Guard Workers of Am., Local 114*, 383 U.S. 53, 55 (1966). Under the National Labor Relations Act ("NLRA") a "labor dispute" is "any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 152(9). This definition is construed very broadly and "rarely have courts found concerted union activities to fall outside this broad definition." *Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655*, 39 F.3d 191, 195 (8th Cir. 1994) (citing *Hasbrouck v. Sheetmetal Workers Local 232*, 586 F.2d 691, 694 n.3 (9th Cir. 1978); *see also Trustees of Painters Union Dep. Fund v. Int'l Interior/Exterior Specialists Co.*, No. 05-70110, 2007 WL 951414, at *7 (E.D. Mich. Mar. 27, 2007) (Robert, J.). Where a union acts for some arguably job-related reason and not out of pure social or political concern, a "labor dispute" exists. *See Hasbrouck*, 586 F.2d at 694 n. 3. In the present matter, the alleged defamatory statements were made for job-related reasons—that being, Defendants'

17

maintenance that some of Adamo's workers should not have been working on the Ford Project pursuant to the NMA.

Under federal law, recovery is permitted under a state law defamation claim for a defamatory statement arising from a labor dispute *only if* the defendant made the statement with malice, that is with knowledge of its falsity or with reckless disregard for whether it is true or false. *Linn*, 383 U.S. at 55. Conversely, there can be no recovery for defamation uttered or published in the setting of a labor dispute in the absence of malice. *Davis Co.*, 674 F.2d at 562. This rule applies to all state law libel actions. *See Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 273 (1974) ("[L]ibel actions under state law [are] pre-empted by the federal labor laws to the extent that the State sought to make actionable defamatory statements in labor disputes which were published without knowledge of their falsity or reckless disregard for the truth."). "Under *Linn*, a plaintiff must prove, in addition to the elements set out by state law, that the defendant published the statement in question with 'actual malice' as that term is defined in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 … (1964), and its progeny." *Holbrook v. Harman Auto., Inc.*, 58 F.3d 222, 225 (6th Cir. 1995) (citing *Linn*, 383 U.S. at 64-65; *Barss v. Tosches*, 785 F.2d 20, 21 (1st Cir. 1986); *Davis Co.*, 674 F.2d at 562).

As such, to recover on its state law defamation claim, Adamo bears the burden of showing that Defendants "made a false disparaging statement with 'actual malice.' " *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 491 (1984) (citing *New York Times Co.*, 376 U.S. at 279-80); *see also Philadelphia Newspapers, Inc v. Hepps*, 475 U.S. 767, 776 (1986) ("the plaintiff bear[s] the burden of showing falsity, as well as fault"). Adamo does not dispute Defendants' assertion that the determination of whether their statements were false is dependent upon the terms of the labor agreement. Therefore, the Court concludes that the claims also are preempted and must be dismissed. However, even if LMRA preemption does not apply to Adamo's defamation and injurious falsehood claims, the claims are subject to dismissal under Rule 12(b)(6).

"A plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory." *Thomas M. Cooley Law Sch. v. Doe*, 833 N.W.2d 331, 341 (Mich. Ct. App. 2013); *see also Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 446 (6th Cir. 2014). A defamation claim cannot be premised upon " 'loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining' an assertion of fact." *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 597 (6th Cir. 2013) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20-

21 (1990)). "[A] statement … which does not contain a provably false factual connotation" also is not actionable. *Milkovich*, 497 U.S. at 20.

In the Complaint, Adamo identifies only two allegedly defamatory statements: Local 150's order to Adamo's operators to (1) "stop work" and (2) "Get off the machines." Neither statement is an actionable objective statement of fact. Moreover, neither statement concerns Adamo, which is an essential element of Adamo's claims. *See supra*.

## IV. Conclusions

For the reasons stated, the Court concludes that Adamo's claims are preempted by federal law. For that reason, the Court is **DENYING** Adamo's motion to remand the matter to state court (ECF No. 7) and is **GRANTING** Defendants' motion to dismiss (ECF No. 6.)

**IT IS SO ORDERED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: January 30, 2020